Good morning. May it please the court, I'm John Cross for Larry Seaburg, the appellant here. As the court knows, the summary judgment was granted in the district court primarily on the issue of causation with regard to Mr. Seaburg's discrimination claims. It's Mr. Seaburg's position that the test with regard to causation is sort of being misapprehended by everybody involved. Here it appears the district court focused only on the issue of temporal proximity, finding basically that somewhere in the neighborhood of four years having passed since an EEOC claim was filed by Mr. Seaburg, that any action taken with non-hires in 98 and 99 was too occasional. It's our position that that is not the only bit of causation that was in this record. There is clearly other facts which can establish causation. It starts on the reinstatement. When Mr. Seaburg was reinstated to his job in 94, there's an immediate problem. I think the order was that he be reinstated at the same level as all the folks he was hired with originally. That essentially didn't happen because he wasn't given the same grade as the others. Now, we have a gentleman here who then makes complaints about that, and so it's sort of an ongoing process. He got his job back. He received a term appointment, which is year by year, et cetera, until 1999. But the whole thing continued to happen, so to speak, during the time of his reemployment. But what is there to suggest? I mean, I understand your argument and I understand the law to be that a time gap of substantial length doesn't disprove causation, but it doesn't affirmatively offer anything in favor of causation. And I haven't really heard anything from you that suggests anything other than, well, because this happened here and this happened later, there must be a connection. What evidence is there to suggest that there's a connection other than the fact you said one thing happened earlier and one thing happened later? Well, I think that, again, starting with his reinstatement not being similarly situated to his hires, then soon there… Okay, we'll stop right there. What tells us that's connected with the episode of, let's see, the reinstatement was 1994. So we've got a gap right there of a couple of years between when he was laid off, actually, sometime before. Yes. And I don't have the dates noted down here. They're difficult because the parties have different dates. So the successful complaint was in 94 and he's reinstated then. And what he complained about happened, I've forgotten whether it's 92 or 90, but sometime before. Okay, he complains in 92, he's reinstated in 94. And you say that he wasn't reinstated at the proper level, although that's something you could have complained about at the time. But what tells us that the failure to put him to the proper level was connected, was retaliation as opposed to a misunderstanding of the order? Well, I think on its face it does. Well, see, if all you have to offer is on its face, then you really have a – your claim is one of temporal proximity. One followed the other. But couldn't it be just as plausible that somebody misunderstood the order and did what they thought they were supposed to do, and that's where we are? Well, that's – I mean, after explaining the passage of time by that, maybe, as you suggest, somebody did misunderstand the order or something like that. But that takes a significant amount of time, it seems, to be rectified. And meanwhile, this employee is complaining about it. At one point, he worked up through the chain of command. We're in a situation where, to say, the district court did, in fact, focus on mere temporal proximity, and that's where we think the error is in this case. Can I zero in on what evidence I saw was the only thing I could find of non-pure temporal proximity? And that was a statement by Ms. Worley, I believe her name was, or Worthy? Wooley. Wooley. Wooley, correct. Well, she basically says to him in 1998, you know, I don't agree. I know you filed this complaint before. You never should have been reinstated. I don't agree with that. And basically, you should have never been allowed to return to work, which is a fairly strong statement by someone from the employer. My question is, what does that statement mean in the context of your claims? Because it does seem like it would raise a factual issue if it were attached to some adverse employment action, but I can't figure out what that is. Right. Well, effectively, I think Mr. Seabrook's arguing that that is part and parcel of an adverse employment situation, the hostile work environment type thing being criticized by a superior. Well, if that's the only thing that happens, would that work under our case law? The first thing that happens, Your Honor, though, is this reinstatement. And the problem with the reinstatement, the supposition is sort of if the employee doesn't complain right away, does he lose his claim? There was something wrong with his reinstatement. It took some time, a year, I'm going to guess. I think he was reinstated in 1996. Right. This is two years later that she's talking. Right, when the supervisor is criticizing him. But that follows the problem here. If she's not reinstated, so what I'm trying to figure out is if she's saying bad things, what claim does that link up to? Well, she said bad things about the initial claim. And the initial claim, what I'm arguing here is that that took some time to resolve because all the elements of his reinstatement weren't taken care of at the time of his reinstatement. So there's a passage of time there where this employee is trying to get the redress that he's been given by the EEOC claim. He doesn't get it. It takes some time for him to get there. But it doesn't have anything to do with that. In other words, that is all true, at least if we take it as a given from his statements. But how does that link up with Ms. Woolley in 1998? It has nothing to do with all this stuff that's going on from 94 to 96 to 98. The claim supposes that she does, that all of these folks that were involved, the human resources department that had ‑‑ She was only a supervisor for four months. Correct. But there's information in this record that the folks from human resources, the higher supervisors of Shop 71 in this instance, that they're all talking. That there's ‑‑ Right. But I guess I'm ‑‑ maybe I'm being too specific, but it seemed to me that was the most concrete evidence he had, which could be compelling. But Ms. Woolley was a supervisor only from about January until April of 1998. That's correct. So if she's a bad apple, then something has to have occurred within that time to kind of pin it on her, wouldn't it? Yeah, I think what we're saying is that's part and parcel of the same causation. First thing he does is try and work his way into getting what he was supposed to get in the first place. That takes some time. Then we're very ‑‑ we're much closer to Ms. Woolley's actions in September of 97, I believe, is when that alleged harassment started to occur. So there's not this ‑‑ I first look at the operative date really as when he's reinstated. And there's nothing but problems since then for Mr. Seberg. And that's the difficulty, is if an employee tries to buck up and live with his situation while making appropriate complaints, does the passage of time while he does that mean that he has no claim? And that's essentially what the ruling was in the district court. That's the first one. Then there's a claim for non‑hiring in 1999, and he'd filed a complaint ten months before that. And then there's a third one. Is that it? That's correct. 2001. I would say right now, Your Honor, the third one probably has no merit since the PSN could say no one was hired. It's an allegation of not being rehired. You're dropping the 2001 claim? Is it the 99? The 99. In 99 there was a claim with regard to non‑selection. No one was hired in 99. Right. You're dropping that claim? Essentially. What do you mean essentially? You're either dropping it or you're not. Are you withdrawing that claim? Yes. Okay. So then we go to the 2001 claim. And what event do you tie that to? Well, I have no argument with regard to 2001. That was part of Mr. Sebring's attempt to amend. Yes. That was denied in the district court. Yes, I know. I don't think it really makes sense. The district court's ruling on the first complaint without amendment was that it was too attenuated at that time. Certainly, plain logic says if he's trying to add something later, it's going to suffer the similar fate. The issue here is ‑‑ So you're dropping that claim also? I think that that would be for the district court to decide after the temporal proximity issue is decided on the first. So your argument to us is really focused on the first? Yes. And I think it has to be because that's the passage of time that the district court said was too attenuated. All right. Thank you, counsel. Good morning. May it please the Court, my name is Jamie Mitted. I'm an assistant United States attorney appearing on behalf of the Secretary of the Navy. Your Honors, Title VII is an important piece of legislation designed to protect employees from discrimination in the workplace. Along with that goes the right of an employee to file a complaint of discrimination without fear of retaliation. However, the fact that an employee does file a complaint of discrimination does not give that employee a free pass for the rest of his or her life. It does not mean that anything that the employee disagrees with that happens afterwards is retaliation. Federal employees, federal plaintiffs, I should say, are limited to the issues that are raised and investigated at the agency level. Obviously, for each claim of discrimination, there are elements of proof that must be met. And to defeat a summary judgment motion, a plaintiff must come forward with some evidence as to those elements. Speculation and unsupported beliefs are not enough. In the instant case, Mr. Seaberg has raised several issues of retaliation. As a result, he has to show that he engaged in prior protected activity, after that there was an adverse action, and that there was a causal connection between the prior protected activity and the adverse action. In this case, Mr. Seaberg has not presented any evidence of those elements. His first claim was raised in approximately March of 1998, after he was not selected for a permanent position. At that time, Mr. Seaberg alleged that he wasn't selected because he engaged in EEO activity in 1994. Judge Burgess correctly ruled that the length of time between the prior protected activity and the failure to hire him in January-February of 1998 was too long to create a causal connection. Even assuming, Your Honors, that the Court would find a causal connection, despite the fact that years had elapsed, there was absolutely no evidence presented that a legitimate reason given by the Navy for not giving Mr. Seaberg one of those permanent positions was pretextual. Mr. Seaberg undisputedly rated last on the list of applicants for the position, and the individuals who chose the people for those positions claimed that the people that they chose were better than Mr. Seaberg, and there was no evidence to the contrary. Is this the time that he claims they didn't use half the application? That is correct, Your Honor. The applications, the individuals get told what they have to submit, and they have to submit it to human resources. Human resources then have to take only what that applicant submits and rate the application based on that. Doesn't he say he submitted the entire application? Mr. Seaberg claims that part of his application was lost. Yes. That may very well be true. We have no way of knowing whether it was lost or whether it was submitted. Doesn't that raise a factual question if they didn't consider his full application? No, I don't believe it does, Your Honor. It doesn't raise an issue that goes to that. Well, let's take the whole picture. He files a complaint. Two years later, they agree he was right. He's to be reinstated at the same level as the others. He isn't. He complains during that two-year period. The first time he has a chance for another job, they lose half his application. That doesn't raise a question as to whether there's retaliation? I don't believe it does, Your Honor. Title VII doesn't protect against ineptitude. It doesn't protect against. Well, we don't know if summary judgment. It only protects against discrimination. At summary judgment, we don't know why they happened to lose his application. Well, we could have known. I take it the plaintiff had opportunity to take discovery and had opportunity to submit evidence in response to the motion. The plaintiff certainly did. There was no evidence presented on that issue whatsoever other than Mr. Sieber's own testimony that somehow his entire application was not considered. He tried after the position had closed to resubmit information, and the Human Resource Department advised him that at that point they were not able to do that because it would not be fair to the other applicants, that they had to rate each applicant on the information that was given to them at the time, and which is what they did. And there's no evidence that they did anything improper or erroneous. He was rated on that information, and it was separate people. Do they say that they had his full application? No, Your Honor. They said they rated him on the information that was presented to them. Mr. Sieberg said that there was other information that wasn't considered, and he, Mr. Sieberg, said they must have lost that information. There is no evidence that that information was submitted. There's a dispute as to what they received. Excuse me? There's a dispute as to what they received. It's disputed by Mr. Sieberg. Mr. Sieberg, yes.  Yes, that is disputed. Because the human resource person who reviewed all of the applications indicated that she did not have that. The information that she has is what she rated the applicants on. But there's no information that it was a conscious loss or throwing it in the trash bin. Absolutely none, Your Honor. There is no information on the record. There's no evidence whatsoever that that occurred. In fact, the declaration ---- Would you address this Ms. Woolley's statements? Because she has some, or at least according to him, she made some fairly pointed comments about you never should have been reinstated, and I disagree with that. And in his view, she was secretly having people spy on him, and she was sending bad e-mails and information about his job performance. What claim does that relate to? That would relate to his next claim that he was retaliated against. And do you mind if I get a sip of water? After he filed his March 1998 claim that he was retaliated against because he was not selected for a permanent position, he filed another claim saying that after that, his current supervisor at the time, Janet Woolley, female supervisor, retaliated against him by criticizing his work between March and approximately the end of April when he was reassigned to another supervisor. The only evidence on the record, the statements that you refer to, Your Honor, only came up in Plaintiff's reply to the summary judgment motion. Those statements were not on the record in his deposition. They were not on the record in his complaint. They were not on the record in the EEO complaint that was filed with the agency. He mentioned those particular statements in his response to the summary judgment motion. There's no evidence that those statements were made, but assuming for the purpose of summary judgment that Ms. Woolley was foolish enough to make such inappropriate statements. It still doesn't affect the outcome. Judge Burgess correctly ruled that as to that particular allegation, there was no adverse action. It's undisputed that Ms. Woolley only spoke to Mr. Seabird. She had the temerity, evidently, to tell him what her expectations were as a supervisor and what she expected for him and that he wasn't performing up to her standards. There's no sex discrimination claim against her? It was, Your Honor, and that was evidently dropped in the appeal because, exactly, because there was absolutely no evidence whatsoever that she harassed him sexually. She evidently criticized his work, but it's undisputed that she did not force him or formally discipline him. She did not give him a bad evaluation in the month and a half that she, that he complains that she was criticizing him. There was absolutely no adverse action. So even assuming arguendo that she made those statements, there was no adverse action to Mr. Seabird. She had no, nothing to do with the selection, you know, in his first complaint when he wasn't selected for the permanent position. The issue with Ms. Woolley goes to his second complaint, and that's when he was basically alleging that she was sexually harassing him, and then they dropped it and concentrated on retaliation. However, there was no adverse action. And the only things that happened subsequently are the things that the plaintiff's counsel has conceded really aren't in front of us anymore. And since that has been conceded, I was about to go in and show how Judge Burgess was absolutely correct on those issues also. The fact of the matter here is there is absolutely no evidence of discrimination. The only thing is that Mr. Seabird continues to say that everything that happened to him after he was reinstated is a result of discrimination. Now, I would like to point out, though, because I think it's being a little confusing here, Mr. Seabird was hired in 1989. He was on an appointment that required that had to be renewed every year. He was let go in 1992 because there was no work. He applied for a position in 1994. He wasn't hired. He grieved it, and the Navy agreed to reinstate him. That reinstatement and any concern he has about whether or not the Navy reinstated him properly is not before this Court, because he did not file any EEO complaint saying that there was a problem with his reinstatement or that he was discriminated against as a result of it. The only issues before this Court are the issues that we have discussed this morning. Thank you, counsel. Thank you, Your Honor.
judges: Reinhardt, McKeown, Clifton